DECISION AND JUDGMENT ENTRY
This is an appeal from a Lawrence County Common Pleas Court judgment reversing the State of Ohio, Unemployment Compensation Review Commission's[1] (Commission) decision to deny Wanda P. Jenkins, appellant below and appellee herein, unemployment compensation benefits.
The Commission, appellee below and appellant herein, raises the following assignment of error for review:
 "THE LAWRENCE COUNTY COURT OF COMMON PLEAS ERRED IN REVERSING THE OHIO UNEMPLOYMENT COMPENSATION REVIEW COMMISSION'S DECISION THAT WANDA P. JENKINS WAS NOT ENTITLED TO UNEMPLOYMENT COMPENSATION BENEFITS."
The facts in the case at bar are not seriously disputed. On September 15, 1998, appellee filed an application for a determination of benefit rights with respect to a benefit year beginning September 13, 1998. Appellee filed her first claim for benefits with respect to the week ending September 19, 1998.
On October 7, 1998, the administrator issued an initial determination that appellee quit her employment with the Ironton-Lawrence County Area Community Action Organization ("CAO") without just cause. The October 7, 1998 determination noted that appellee quit her employment because of a dislike of a fellow employee or because of a personality conflict. Appellee timely appealed the initial determination, and on October 30, 1998, the administrator issued a redetermination affirming the initial October 7, 1998 determination.
Appellee timely appealed the October 30, 1998 redetermination. On January 7, 1999, the Commission held a hearing. Appellee testified that she had worked at CAO for approximately sixteen years. She stated that she quit because of harassment she had suffered at the hands of Diane Pemberton, a co-worker. Appellee stated that on August 7, 1998 Pemberton followed appellee out of the building and approached appellee with profane language. Appellee claimed that Pemberton called appellee a bitch and a liar. Appellee stated that up until the August 7, 1998 incident, the two never had any type of hostile encounter. Appellee testified that the next workday, she reported the incident to the assistant director, Gary Tyo.
On January 15, 1999, the hearing officer issued the following findings of fact:
 "Claimant began her employment with the CAO in November of 1982. For the last fifteen years, she worked as a Case Manager.
 On Friday, August 7, 1998, claimant was confronted as she was leaving work by Diane Pemberton in the CAO's parking lot. Ms. Pemberton, a co-worker and friend for ten years, was upset because Mr. McCoy [another CAO employee and one of appellee's superiors] had told her that the claimant was going to call her and make false allegations of marital infidelity. Ms. Pemberton used profanity in yelling at the claimant, and called her a liar, but did not threaten her. Claimant stated that she did not know what Ms. Pemberton was talking about, and then drove away.
 Claimant returned to work on August 10, 1998, and worked that entire week. Ms. Pemberton also worked that week, and there were no other incidents between them. Claimant then was off of work for the week of August 17, 1998, to care for her husband while he was ill.
 On August 24, 1998, claimant spoke to Mr. McCoy and learned what he had told Ms. Pemberton. Claimant denied saying that she would call Ms. Pemberton's husband. At that time, claimant stated that she would be taking some time off because she could not return to work after what had happened on August 7, 1998. On August 28, 1998, claimant quit her employment with the CAO because she believed she could not return to work after what had happened on August 7, 1998."
The hearing officer determined that appellee did not quit her employment with just cause. The hearing officer stated:
 "Claimant testified that she could no longer work for the CAO because of the August 7, 1998, incident. However, that incident appears to have been an isolated one. Claimant testified that Ms. Pemberton had been one of her co-workers for ten years, and that she had considered Ms. Pemberton to be a friend. Further, Ms. Pemberton returned to work with the claimant for the entire week of August 10, 1998, without further incident. Over the next two weeks, when claimant was away from work, she continued to have no incidents with Ms. Pemberton. Under these circumstances, the Hearing Officer finds that the single incident of verbal harassment of August 7, 1998, did not provide the claimant with just cause to quit her employment."
After further appeal was denied, appellee timely appealed the hearing officer's decision to the trial court.
On February 11, 2000, the trial court reversed the Commission's decision. The court explained its reasoning as follows: "The Court finds that the words in the Record uttered against the Appellant were extreme and outrage[ous] and further find[s] that the employer took no action concerning this matter." Appellant filed a timely notice of appeal.
In its sole assignment of error, appellant asserts that the trial court erred by determining that the Commission's decision was unlawful, unreasonable, and against the manifest weight of the evidence. Appellant argues that the trial court improperly substituted its judgment for that of the Commission when it determined that appellee quit with just cause.
Initially, we note that upon appeal of the Unemployment Compensation Review Commission's decision, a reviewing court, whether a trial court or a court of appeal, must affirm the Commission's decision unless the decision is unlawful, unreasonable, or against the manifest weight of the evidence. See R.C. 4141.28(O)(1); Tzangas, Plakas Mannos v. Ohio Bur.Of Emp. Servs. (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207, 1210. We note that a reviewing court may not reverse the Commission's decision simply because "reasonable minds might reach different conclusions."Irvine v. Unemployment Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15, 18,482 N.E.2d 587, 590; see, also, Tzangas, supra. Rather, the reviewing court is limited to determining whether evidence exists in the record to support the Commission's decision. See Irvine, supra.
In the case at bar, we do not believe that the Commission's determination that appellee quit her employment without just cause and its decision to deny appellee unemployment compensation benefits was unlawful, unreasonable, or against the manifest weight of the evidence. Thus, we disagree with the trial court's conclusion and reverse the trial court's judgment.
R.C. 4141.29(D)(2)(a) generally renders an employee who voluntarily leaves his or her employment without just cause ineligible to receive unemployment compensation benefits. Ford Motor Co. v. Ohio Bureau ofEmp. Servs. (1991), 59 Ohio St.3d 188, 189, 571 N.E.2d 727, 728. "Just cause" to terminate employment exists if a person of ordinary intelligence would have concluded that the circumstances justified terminating the employment. Warrensville Heights v. Jennings (1991),58 Ohio St.3d 206, 207, 569 N.E.2d 489, 491; Irvine,19 Ohio St.3d at 17, 482 N.E.2d at 589 (stating that "`just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act'" (quotingPeyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12, 335 N.E.2d 751, 752)). Furthermore, the Ohio Supreme Court has stated:
 "The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act. Essentially, the Act's purpose is `to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.' Leach v. Republic Steel Corp. (1984), 176 Ohio St. 221, 223."
 Irvine, 19 Ohio St.3d at 17, 482 N.E.2d at 589. The claimant bears the burden of proving that he or she is entitled to unemployment compensation benefits. Id.
Moreover, we note that "whether just cause exists necessarily depends upon factual considerations of the particular case." Id.,19 Ohio St.3d at 17, 482 N.E.2d at 590. As the Irvine court stated:
 "* * * Determinations of purely factual considerations is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence. * * * Like other courts serving in an appellate capacity, we sit on a court with limited power to review. Such courts are not permitted to make factual findings or to determine the credibility of witnesses. * * * The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. * * * The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. * * * Moreover, `our statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision."
 Id., 19 Ohio St.3d at 17-18, 482 N.E.2d at 590.
An employee who terminates his or her employment as a result of harassment "risks quitting [his or] her employment without just cause" if the employee fails to afford the employer a reasonable opportunity to correct the situation. Id., 54 Ohio App.3d at 17, 560 N.E.2d at 809. Cf.Irvine, supra (holding that employee quit without just cause when employee failed to notify employer of health problems and failed to afford employer the opportunity to accommodate employee); Thake v.Unemployment Comp. Bd. of Rev. (1990), 67 Ohio App.3d 503, 587 N.E.2d 862
(holding that claimant quit without just cause when she failed to inform her employer of a continuing problem); Roach v. Administrator (July 20, 2000), Cuyahoga App. No. 76661, unreported (finding that claimant quit without just cause when claimant failed to afford employer reasonable opportunity to correct the problem); Cline v. Unemployment Comp. Bd. ofRev. (Sept. 15, 1999), Washington App. No. 98 CA 5, unreported (finding that claimant quit without just cause when she failed to afford employer reasonable opportunity to correct sexual harassment problems); Wilson v.Ohio Bureau of Emp. Servs. (Nov. 19, 1986), Summit App. No. 12651, unreported (holding that claimant quit without just cause when claimant failed to discuss problem with employer and to afford employer opportunity to correct problem). As the court stated in DiGiannantoni v.Wedgewater Animal Hosp., Inc. (1996), 109 Ohio App.3d 300, 307,671 N.E.2d 1378, 1383:
 "* * * [G]enerally[,] employees who experience problems in their working conditions must make reasonable efforts to attempt to solve the problem before leaving their employment. Essentially, an employee must notify the employer of the problem and request it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to quit without just cause and, therefore will not be entitled to unemployment benefits."
In the case at bar, we disagree with the trial court's decision and we conclude that the record supports the Commission's decision that appellee quit her employment without just cause. The record demonstrates that appellee discussed the problem with her employer. No evidence exists, however, that the problem continued and that appellee's employer failed to take steps to remedy the problem. In fact, the activity in question did not continue beyond the single, isolated event. We do not deem it wise to hold that an employee possesses just cause to quit his or her employment simply because a co-worker, on one isolated occasion, directs harsh words at the fellow employee. "Just cause" in the unemployment context does not exist when a fellow employee, on one occasion, calls the employee seeking unemployment compensation benefits various distasteful, rude, offensive and ill-mannered names (i.e. in the case sub judice the offending words were "bitch" and "liar"). Although appellee may justifiably be outraged at her co-worker's conduct, we believe that her co-worker's action does not provide a sufficient basis for appellee to terminate her employment and to receive unemployment compensation benefits.
Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error and reverse the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be reversed and that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
For the Court
 ___________________________ Peter B. Abele
[1] As appellant notes in its brief, the Unemployment Compensation Review Commission previously was titled the Unemployment Compensation Board of Review and that the Unemployment Compensation Review Commission often continues to be referred to as "the board."